IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGIONS EQUIPMENT FINANCE CORPORATION** | * | |
| | * | **CIVIL ACTION NO. CV-10-258-KD-M** |
| v. | * | *IN REM* |
| **M/V ACCU I (Official Number 533962); AT 1800B (Official Number 530112); and their respective engines, hull, tackle, appurtenances, furniture, etc.,** *in rem* | * | |
| **REGIONS EQUIPMENT FINANCE CORPORATION** | * | |
| | * | **CIVIL ACTION NO. CV-10-287-KD-M** |
| v. | * | *IN REM* |
| **M/V ACCU VIII (Official Number 541599) her engines, hull, tackle, appurtenances, furniture, etc.,** *in rem* | * | |
| **REGIONS EQUIPMENT FINANCE CORPORATION** | * | |
| | * | **CIVIL ACTION NO. CV-10-262-KD-M** |
| v. | * | *IN REM* |
| **AT 3006 (Official Number 1080267) her engines, tackle, furniture, apparel appurtenances, etc.,** *in rem* | * | |

## ORDER

This consolidated action *in rem* against the above named vessels, came before this Court on verified complaint, motion for issuance of writ of arrest, and motion to appoint a substitute custodian. The motions were granted, the writ of arrest issued, and the arrested vessels placed in the custody of the substitute custodian. Now, this action is before the Court on the motion for summary judgment filed by plaintiff Regions Equipment Finance Corporation (Regions); the affidavit of Arthur J. Sharbel, Vice President of Regions Bank, the parent of plaintiff Regions

1

Equipment Finance Corporation memorandum of law in support; and suggested determinations of undisputed facts and conclusions of law (docs. 32, 32-1, 33, 34); the response in opposition filed by vessel owner Accumarine Transportation, L.P. (Accumarine) (doc. 39); Regions' reply (doc. 40); and Accumarine's sur-reply (doc. 46). Upon consideration and for the reasons set forth herein, the motion for summary judgment is **GRANTED.**[1]

I. Findings of Fact

Neither the defendant vessels *in rem* nor the owner Accumarine disputed the existence of the loan agreements, promissory notes, the first preferred fleet mortgage on the Accumarine fleet, documentation of Accumarine vessels subject to this action, or Accumarine's default. Therefore, the following statement of facts is modified and adopted, in part, from Regions' suggested determinations of undisputed fact (doc. 34):

1. On May 18, 2007, Accumarine and Regions entered into a loan agreement, as amended and restated by the First Amended and Restated Loan Agreement dated June 14, 2007, as further amended and restated by the Second Amended and Restated Loan Agreement dated July 11, 2007, and as further amended and restated by the Third Amended and Restated Loan Agreement dated April 17, 2008 (collectively "the Loan Agreement") (Sharbel Affidavit, doc. 32-1 at ¶3; Verified Complaint, doc. 1 at ¶5; doc. 1-1, Exhibit "A").

2. The Loan Agreement governs the terms and conditions by which Regions agreed to make a series of four term loans to Accumarine designated as Facilities A-D, respectively, to

---

[1] Regions also moves to strike paragraphs seven and eleven through fifteen of the affidavit of Henry Wuerst (doc. 42). However, the Court did not rely upon these paragraphs in reaching its decision on the motion for summary judgment. Accordingly, the motion to strike is **DENIED as it is moot.**

finance the acquisition and refurbishment of inland tugs and tank barges. (Sharbel Affidavit, doc. 32-1 at ¶3; Verified Complaint, doc. 1 at ¶5-7, docs. 1-1 – 1-5, Exhibits "A"-"E").

3. The terms of the Loan Agreement are evidenced by four separate promissory notes issued by Accumarine: (a) a Term Promissory Note, dated May 18, 2007, made payable by Accumarine to the order of Regions in the original principal amount of $3,500,000.00 (the "Facility A Note"); (b) a Term Promissory Note, dated June 14, 2007, made payable by Accumarine to the order of Regions in the original principal amount of $2,673,000.00 (the "Facility B Note"); (c) a Term Promissory Note, dated July 11, 2007, made payable by Accumarine to the order of Regions in the original principal amount of $9,360,000.00 (the "Facility C Note"); and (d) a Term Promissory Note, dated April 17, 2008, made payable by Accumarine to the order of Regions in the principal amount of $5,455,000.00 (the "Facility D Note"). (Sharbel Affidavit, doc. 32-1 at ¶4; Verified Complaint, doc. 1 at ¶¶6-8; docs. 1-2 – 1-5, Exhibits "B" – "E").

4. To secure all of its obligations, liabilities and indebtedness under the Loan Agreement and the Notes, Accumarine executed and delivered a "First Preferred Fleet Mortgage" dated May 18 2007, in favor of Regions as mortgagee, which was filed with the United States Coast Guard, National Vessel Documentation Center ("NVDC") on May 22, 2007 at 4:27 p.m. and recorded as Batch No. 589034, Doc. ID No. 7203392. (Sharbel Affidavit, doc. 32-1 at ¶6; Verified Complaint, doc. 1 at ¶9; doc. 1-6, Exhibit "F-1").

5. The Loan Agreement, the Notes, and the First Preferred Fleet Mortgage provide that they are governed by federal law (including the Ship Mortgage Act), to the extent applicable, and otherwise by the laws of the State of Alabama. (Verified Complaint, doc. 1; doc. 1-1, Exhibit

3

"A" at ¶9.13; docs. 1-2 – 1-5, Exhibits "B" – "E" at 3 -4; doc. 1-6, Exhibit "F-1" at ¶6.04; docs. 1-7 – 12, Exhibits "F-2" – "F-7" at ¶ (H)).

6. The First Preferred Fleet Mortgage was supplemented and amended by six separate mortgage supplements, each executed and delivered by Accumarine to Regions on or about June 17, 2007, July 11, 2007, August 9,2007, January 31, 2008, April 17, 2008 and May 1, 2008 (collectively "the Preferred Mortgage") and each duly filed with NVDC. (Sharbel Affidavit, doc. 32-1 at ¶6; Verified Complaint, doc. 1 at ¶9; docs. 1-6 - 12, Exhibits "F-1- F-7").

7. The Preferred Mortgage is in the amount of $20,988,000.00, excluding interest, expenses and fees, and covers, inter alia, the vessels, AT 1800B, Official Number 530112, ACCU I, Official Number 533962, AT 3006, Official Number 1080267, and ACCU VIII, Official Number 541599. (Sharbel Affidavit, doc. 32-1 at ¶6; Verified Complaint, doc. 1; docs. 1-6-12, Exhibits "F-1"- "F-7").

8. By its terms, the Preferred Mortgage secures, inter alia, all Accumarine's existing and future obligations, liabilities and indebtedness to Regions under the Loan Agreement, the Notes and the Preferred Mortgage. (Sharbel Affidavit, doc. 32-1 at ¶6; Verified Complaint, doc. 1; doc. 1-6, Exhibit "F-1").

9. The Preferred Mortgage: (i) identifies the vessels it covers by name and official number; (ii) states the names and addresses of the mortgagor and the mortgagee; (iii) states the amount of the direct or contingent obligations that is or may become secured by the mortgage, excluding interest, expenses and fees; (iv) states the interest of the mortgagor in the vessels covered by the mortgage; (v) states the interest mortgaged; and (vi) is signed and acknowledged by Accumarine, as mortgagor. (Sharbel Affidavit, doc. 32-1 at ¶6; Verified Complaint, doc. 1, doc. 1-6, Exhibit "F-1").

10. Each of the Vessels arrested in this proceeding is owned by Accumarine and is a documented vessel of the United States for which a certificate of documentation has been issued by the NVDC pursuant to 46 U.S.C. §12101 et seq. (Sharbel Affidavit, doc. 32-1 at ¶7; Verified Complaint, doc. 1 at ¶3, ¶9).

11. The supplements describe the amendments made to the original Preferred Mortgage, including, as applicable, the identity of the additional vessel being added to the lien of the original Preferred Mortgage, and any amendment in the stated amount of the mortgage set forth on the cover, page one and page two of that instrument. (Verified Complaint, doc. 1, docs. 1-7 – 12, Exhibits "F- 2"- "F-7").

12. Each defendant vessel covered by the Preferred Mortgage, as supplemented, currently is a documented vessel of the United States owned by Accumarine, and at the time of filing of the original Preferred Mortgage, or at the time of filing of the supplement adding that Vessel to the original Mortgage, as applicable, was the subject of an Application for Documentation filed by Accumarine with the Coast Guard. (Answer, ¶¶3, 4, docs. 22, 18; Sharbel Affidavit, doc. 32-1 at ¶7).

13. The Preferred Mortgage contains no separate discharge provision. The Preferred Mortgage expressly states that "the discharge amount is the same as the total amount." (Verified Complaint, doc. 1; doc. 1-6, Exhibit "F-1" at 2; docs. 1-6 - 12, Exhibits "F-2" – "F-7" at ¶(B)).

14. Regions has not endorsed, negotiated or otherwise transferred the Notes and is the present and sole owner and holder of those instruments. (Sharbel Affidavit, doc. 32-1 at ¶5).

15. Except for a brief period of interest only payments under the Facility A and Facility C Notes, each Note was payable in monthly installments of principal and interest. (Sharbel Affidavit, doc. 32-1 at ¶8).

16. Accumarine last made a payment of principal in December 2008 (which was credited to past-due installments which were payable in November 2008), and although Accumarine made some sporadic interest payments early in 2009, it has not made any interest payments since June 2009. (Sharbel Affidavit, doc. 32-1 at ¶8).

17. In a letter agreement dated April 30, 2009, Regions agreed to a brief forbearance, but Accumarine did not comply with the terms of the letter agreement and, in any event, the forbearance period terminated on April 30, 2009. (Sharbel Affidavit, doc. 32-1 ¶12).

18. Accumarine has failed or refused to pay the installments of principal and interest scheduled under the Notes when due and is currently in default of the Loan Agreement, the Notes and the Preferred Mortgage. (Sharbel Affidavit, doc. 32-1 at ¶9; ¶¶12-14; Verified Complaint, doc. 1 at ¶11).

19. Regions accelerated the Notes as of April 30, 2009 (Sharbel Affidavit, doc. 32-1 at ¶11 &12), and the entire principal balance outstanding under the Notes is now due and payable by Accumarine.

20. Accumarine is also in default for failing to provide copies of its audited annual financial statement, failing to maintain the debt service coverage ratio as agreed in the loan agreement (Sharbel Affidavit, doc. 32-1 at ¶9, 10), and allowing liens to accrue against the vessels which was prohibited by the loan agreement (doc. 33, p. 5).

21. As of March 15, 2010, the outstanding balance of principal and interest, accrued and unpaid, totaled $20,466,338.62. (Sharbel Affidavit, doc. 32-1 at ¶13).

II. Standard of review

Summary judgment shall be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (footnote omitted)). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

   III.  Discussion

Vessel owner Accumarine does not dispute that that the preferred mortgage is a valid mortgage on its fleet or that it is in default of the terms of the preferred mortgage, third amended and restated loan agreement, and promissory notes. Therefore, upon review of the third amended and restated loan agreement (doc. 1-1), preferred mortgage and supplements showing registration with the United States Coast Guard National Vessel Documentation Center (docs. 1-6 through 1-12), and the promissory notes (docs. 1-2 through 1-5), the Court finds that there is no dispute of

fact that the preferred mortgage is a valid ship mortgage which meets the requirements of the Ship Mortgage Act, 46 U.S.C. § 31322 and 31325(a), and that the preferred mortgage "has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens). 46 U.S.C. § 31326(b)(1) (parenthetical in original). The Court further finds that there is no dispute of fact that Accumarine is in default of its obligations under the preferred mortgage and that as of March 15, 2010, the outstanding balance of principal and interest, accrued and unpaid, totaled $20,466,338.62, and that interest accrued thereafter at the rate of eighteen per cent (18%) per annum (Sharbel Affidavit, doc. 32-1 at ¶ 13). The Court further finds that there is no dispute of fact that the loan agreement and the preferred mortgage provide for recovery of the cost of collection and attorneys' fees incurred by the mortgagee Regions (doc. 1-1, 37-38, ¶ 9.1; doc. 1-6, p. 15, ¶ 5.05).

Accumarine argues that Regions should be estopped from enforcing the default, foreclosing the mortgage, and selling the vessels based on promissory estoppel and equitable estoppel. In support, Accumarine alleges that some of its principals were also personal guarantors for Dunhill Terminals, L.P. on another related loan with Regions. Accumarine alleges that when Dunhill and Accumarine "fell on difficult financial times", both it and Dunhill "became deficient on their respective notes" and the guarantors began to negotiate with Arthur Sharbel, V.P. of Regions, and other third parties to resolve the debts. Accumarine alleges that Regions through Sharbel "represented to, and promised the Guarantors that in return for resolving the Dunhill debt first, [Regions] would not proceed against Accumarine's assets." (doc. 39, p. 3). Accumarine states that it reasonably relied on this promise and as a result the guarantors focused on resolving the Dunhill debt and did not arrange for a third party to purchase

8

the preferred fleet mortgage. Accumarine asserts that contrary to the promises and representations, Regions began arresting Accumarine vessels.

In raising the defenses of promissory and equitable estoppel, Accumarine relies upon the affidavit of its President, Henry Wuertz, who stated as follows:

> 9. During the Dunhill negotiations, Buddy Sharbel repeatedly represented to me, and others present during those negotiations, that REFCO would not discuss, proceed, take action, file suit or otherwise attempt to resolve Accumarine's debt to REFCO in return for resolving the Dunhill Terminals matter first. This was to REFCO'S benefit as it allowed them to concentrate on a much larger liability - - which was ultimately resolved.
>
> 10. Furthermore, Mr. Sharbel represented to me that he would contact Accumarine before taking any action contrary to REFCO's promises not to arrest Accumarine's fleet. Instead, without contacting me, REFCO began arresting Accumarine's vessels on April 14, 2010. Contrary to REFCO's promises and representations that they would not arrest Accumarine's fleet or take action against it for handling the Dunhill Terminals matter first, once the Dunhill Terminal matter was resolved, REFCO began arresting Accumarine's tugs and barges, both in this action, and also in the Mobile Action.
>
> 11. Accumarine and the guarantors relied upon Mr. Sharbel's representations by postponing an attempt to find a new investor for the sale of the fleet mortgage prior to a default being declared. After a default was declared and REFCO began seizing vessels, it became much more difficult for the Accumarine to sell the fleet mortgage note.

(doc. 39-2, p. 3-4, Wuertz affidavit).

Regions argues that Sharbel's alleged oral representation which attempts to modify the preferred mortgage, Loan Agreement and promissory notes, would not be enforceable under Alabama law because it violates the Statute of Frauds, Ala. Code § 8-9-2 (1975), since it was not in writing or signed.[2] In response Accumarine argues that maritime law applies to Regions'

---

[2] The statute sets forth in relevant part:

(Continued)

action brought under the Ship Mortgage Act to foreclose the preferred mortgage and that oral modifications to preferred mortgages are valid under maritime law. Accumarine argues that because ship mortgages are entered into globally, uniform application of federal law is necessary and to apply the Alabama Statute of Frauds would be contrary to the oral contract doctrine in admiralty law and would undermine uniformity principles inherent in the Act.

Alternatively, Regions argues that Accumarine cannot establish reasonable reliance, a necessary element of both a promissory estoppel and equitable estoppel defense. Regions points out that Section 9.10 of the loan agreement states that the loan agreement and other loan documents, which would include the preferred mortgage, "may not be contradicted or varied by evidence of prior, contemporaneous or subsequent oral agreements or discussions of the parties" and that they may be "amended or waived only by an instrument in writing signed by the parties". (Doc. 1-1, p. 39). Regions argues that Accumarine, as a sophisticated party, could not have reasonably relied on Sharbel's alleged oral representation in view of this plain prohibition against oral modification. Regions also argues that Accumarine cannot establish detrimental reliance on the basis that it delayed finding an investor to purchase the preferred mortgage because the mortgage was Regions', not Accumarine's, asset to sell.

---

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: . . . .
>
> (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000 . . .

Ala. Code § 8-9-2 (1975).

In the loan agreement,

> "Loan Documents" means this Agreement, the Notes, the Preferred Mortgage, the Mortgage Supplements, the Guaranties and all additional promissory notes and other instruments, documents, and agreements executed and delivered pursuant to or in connection with this Agreement, as such instruments, documents, and agreements may be amended, modified, restated, renewed, extended or supplement from time to time.

(Doc. 1-1, p. 10) (underlining in original).

Also, in the loan agreement, "Remedies Upon Default" include that Regions "may exercise all rights and remedies available to it in law or in equity, under the Loan Documents, or otherwise." (doc. 1-1, 37, Section 8.2). Thus Regions may pursue a vessel foreclosure or arrest and sale under the preferred mortgage.

Section 9.10, of the Loan Agreement, is captioned "Entire Agreement: Amendment" and explains as follows:

> THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REFERRED TO HEREIN EMBODY THE FINAL, ENTIRE AGREEMENT AMONG THE PARTIES HERETO AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREON AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSION OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO. The provision of this Agreement and the other Loan Documents to which Borrower or any Guarantor is a party may be amended or waived only by an instrument in writing signed by the parties hereto.

(Doc. 1-1, p. 39).

In Regions Equipment Finance Corp. v. The AT 2400, et al., Civil Action No. 1:10-cv-00215-RC (E.D. Tex., Sept. 2, 2010) (unreported opinion), the District Court considered substantially the same facts and arguments and set forth the following applicable law and analysis:

a. Applicable law

Where no federal maritime law exists, the federal courts should not "attempt to fashion an admiralty rule." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 239 (5th Cir. 2009) (as applied to marine insurance context) (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368, 370 (1955)). "[T]he court in maritime cases must apply general federal maritime choice of law rules." *Great Lakes*, 585 F.3d at 242 (emphasis in original) (quoting *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 890 (5th Cir. 1991)).

"Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes*, 585 F.3d at 242. "[W]here the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law." *Stoor v. Fluor Drilling Servs., Inc.*, 851 F.3d 1514, 1517 (5th Cir. 1988); *see also Great Lakes*, 585 F.3d at 242.

b. Analysis

Accumarine does not argue that Alabama has no substantial relationship to the parties or the transaction. [20] Instead, it asserts that Alabama law—under which promissory and equitable estoppel do not appear to be viable exceptions to the Statute of Frauds—conflicts with maritime law, as primarily embodied by <u>Kossick v. United Fruit Co.</u>, 365 U.S. 731, 81 S. Ct. 886 (1961). In *Kossick*, an injured sailor sought to recover maintenance and cure, based on an oral employment agreement. His employer argued that the employment contract was void under the New York Statute of Frauds. The Supreme Court disagreed, finding that the contract was maritime in nature, *id*. at 738, 81 S. Ct. at 892, but not local, meaning that application of state law would disturb maritime law's uniformity. *Id*. at 742, 81 S. Ct. at 894. The Court concluded that maritime law should apply, noting that under maritime law, "oral contracts are generally regarded as valid." *Id*. at 735, 81 S. Ct. at 889.

> [Footnote 20.] Accumarine would be hard-pressed to do so. REFCO is an Alabama corporation. Accumarine, although a Texas limited partnership, listed its address on the Third Amended Loan Agreement and Preferred Mortgage as an Alabama post office box. Two of Accumarine's individual guarantors—Intervenors Henry Wuertz and Steven Frietsch—listed Alabama addresses on the loan documents, although both apparently now reside in Texas. Under

the Third Amended Loan Agreement, notices to Accumarine and its guarantors about the agreement were to be directed to its Alabama address. Pl. Compl., Ex. A, at ¶ 9.12 [Doc. # 1]. The Preferred Mortgage was executed in Alabama. Pl. Mot. Sum. J., Ex. F-1 at 17. Finally, one of the Defendant vessels is believed to have been stripped and moored at Dunhill's Alabama facility. *Id.*, at 3 n.2.

Accumarine also points to Fifth Circuit law for the proposition that the

Ship Mortgage Act . . . must be construed, if possible, to maintain the desired uniformity necessary to effectuate its purposes. Although state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system it cannot be employed to contravene an act of Congress, to prejudice the characteristic features of the maritime law or to disrupt the harmony it strives to bring to international and interstate relations.

*J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972). According to Accumarine, applying Alabama's Statute of Frauds would conflict with the "fundamental purposes of maritime law." *See Stoor*, 851 F.3d at 1517.

The court disagrees. As Accumarine concedes, a ship mortgage, unlike the employment contract in *Kossick*, is a maritime contract only by virtue of the Ship Mortgage Act, not under traditional maritime law. *J. Ray McDermott*, 457 F.2d at 817 ("[P]rior to the enactment of the Ship Mortgage Act admiralty had no jurisdiction over a suit to foreclose a mortgage on a ship."). The purpose of the Ship Mortgage Act was to afford "substantial security to persons supplying essential financing to the shipping industry." *Id*. Far from promoting uniformity or preventing a contravention of Congressional intent, adopting the rule Accumarine suggests would actually undermine both goals by harming lenders like REFCO. Permitting oral modification of ship mortgages would lessen the security provided to lenders that provide financing to the shipping industry, not increase it.

Several courts have disagreed with Accumarine's position. *See, e.g., Del Mar Seafoods, Inc. v. Cohen*, 2008 WL 1734749 at *4 (N.D. Cal. Apr. 11, 2008) (applying California contract law with respect to an alleged oral modification to a vessel promissory note where there was "no applicable overarching admiralty rule."); Key Bank of Washington v. Concepcion, 1994 WL 762157 at *3-5 (W.D. Wash. Sept. 20, 1994) (where the parties' vessel Loan Agreement had a clause

13

prohibiting oral modifications, the court looked to Washington's Statute of Frauds to disregard the parties' alleged oral forbearance agreements and grant summary judgment in favor of Key Bank).

While the forum selection clause at issue here does first require application of United States law, it requires it only "to the extent applicable." It is undisputed that the Ship Mortgage Act has gaps. For instance, it does not define what a mortgage is, what it consists of, or how it can be amended. Utilizing Alabama law[21] to fill in these gaps, where Alabama has a substantial relationship to the parties and the agreement, and doing so would serve, rather than undermine, the purpose of the Ship Mortgage Act, is appropriate. Further, Alabama has an interest in regulating contracts which, although maritime in nature, are local in the sense that they affect an Alabama lending institution (REFCO), involve several guarantors and a mortgagee who have some connection to Alabama, and were executed in Alabama. This is distinguishable from the employment contract in *Kossick*.

> [Footnote 21] Neither side really argues that Texas law should apply. REFCO argues its application in the alternative, in the event the court were to somehow conclude that the Alabama choice of law provision is inapplicable. Although Accumarine suggests in passing that Texas law could apply, it groups Alabama and Texas law together, arguing only that federal maritime law should apply instead of either state's law. See, e.g., Def. Sur-Reply, at 5 ("[T]his Court is not sitting in diversity but rather in admiralty, and consequently neither Texas's nor Alabama's substantive or procedural laws apply . . . ."). The court will therefore not consider whether Texas, rather than Alabama, law should apply to Accumarine's promissory and equitable estoppel defenses.

The court will therefore utilize Alabama law in determining whether Accumarine's promissory and equitable estoppel defenses preclude summary judgment.

*2. Alabama law precludes Accumarine's promissory and equitable estoppel defenses*

   a. Applicable law

REFCO's primary argument is that the alleged oral agreement falls under Alabama's Statute of Frauds and therefore is void, because no exception applies. Under this statute:

14

> [E]very agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: . . . (7) Every agreement or commitment to lend money, delay or forebear repayment thereof or modify the provisions of such an agreement or commitment . . . .

Ala. Code § 8-9-2 (1975).

Promissory estoppel is defined under Alabama law as "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce some action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Ford v. Jackson Square Ltd.*, 548 So.2d 1007, 1013 (Ala. 1989) (internal quotation omitted). Equitable estoppel requires that: (1) the party against which estoppel is asserted communicate something in a misleading way, with the intent that the communication be acted upon; (2) the party asserting estoppel reasonably relied on the communication; and (3) that the party relying on the communication would be harmed materially if the other party were permitted to now take a position inconsistent with its earlier conduct. *Allen v. Bennett*, 823 So.2d 678, 685 (Ala. 2001).

Equitable estoppel and promissory estoppel differ in that the former requires reliance on a misrepresentation, while the latter does not. *Durham v. Harbin*, 530 S.2d 208, 213 n.6 (Ala. 1988). In *Durham*, with respect to promissory estoppel, the court stated that "[a]lthough allowing a plaintiff's reliance on nonfraudulent representations to abrogate the Statute of Frauds is a widespread phenomenon . . . Alabama has rejected this approach to date . . . ." *Id*. at 213. In *DeFriece v. McCourquodale*, 998 So.2d 465, 471 (Ala. 2008), the court further narrowed the Statute of Frauds exceptions by opining that "a party may not avoid the effect of the Statute of Frauds by framing the claim as one alleging promissory fraud or by invoking the historical fraud-in-the-inception exception to the Statute of Frauds." *See also Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003) (holding "that an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud"); *Holman v. Childersburg Banco. Inc.*, 852 So. 2d 691, 696-97 (Ala. 2002) (holding that in the absence of limited circumstances, a party is not estopped from raising a statute of frauds defense even if the agreement actually existed).

b. Analysis

The court first concludes that the oral agreement in question falls within Alabama's Statute of Frauds. Taking Accumarine's allegations as true for the purposes of this analysis, the oral agreement was for REFCO to forbear repayment of the loan, at least for the period of time until Dunhill's debt was satisfied, and to notify Accumarine before any action was taken to collect on the loan. The purported agreement therefore modifies the provisions of a monetary loan, since Third Amended Loan Agreement and Preferred Mortgage allowed REFCO to accelerate the loan, bring suit, and arrest Accumarine's vessels without notice if Accumarine was in default.

Even assuming that Accumarine could assert promissory and equitable estoppel defenses in light of the Alabama Supreme Court's holdings in *Durham* and *DeFriece*, its allegations, even if true, do not satisfy the elements of the defenses ….

First, both defenses require that Accumarine justifiably rely on Mr. Sharbel's representations to its detriment. Accurmarine's reliance on Mr. Sharbel's oral promises could not be reasonable, in light of the fact that Section 9.10 of the Third Amended Loan Agreement states that:

> This Agreement and the other Loan Documents referred to herein embody the final, entire agreement among the parties . . . and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto . . . The provisions of this Agreement and the other Loan Documents to which Borrower and any Guarantor is a party may be amended or waived only by an instrument in writing signed by the parties hereto.

Pl. Mot. Sum. J., Ex. A, at ¶ 9.10. Most of this passage is in capital letters. "Under Alabama law, it is unreasonable as a matter of law to rely on representations that contradict a written document in the plaintiff's possession." *G.F. Kelly Trucking, Inc. v. U.S. Xpress Enters., Inc.*, 2007 WL 3227390 at *7 (M.D. Ala. Oct. 30, 2007); *see also Foremost Ins. Co. v. Parham*, 693 So.2d 409, 421 (Ala. 1997) ("[T]he trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.").

Civil Action No. 1:10-cv-215-RC, doc. 100, Order on summary judgment, p. 12-18. The court

agrees with and adopts this thorough analysis of the issues.

Moreover, even if the Ship Mortgage Act rendered the preferred mortgage a maritime contract, and such could be modified by an oral agreement, the parties explicitly agreed in the loan agreement that the loan documents including the preferred mortgage, would not be subject to oral modification. "Under maritime law, 'the general rules of contract construction and interpretation apply[.]'" United States v. AQ Boat, LLC., 2010 WL 3070417, 2 -3 (E.D.La., August 4, 2010) (citations omitted). "In interpreting a contract, its express terms are given the greatest weight. . . . Words in a contract must be given their plain meaning unless the contract is unambiguous." Id. (citation omitted). Section 9.01 of the loan agreement is not ambiguous. The "plain meaning" of the Section is that the parties intended to prohibit oral modification of the loan documents including the preferred mortgage. See F.W.F., Inc. v. Detroit Diesel Corp., 494 F.Supp.2d 1342, 1357 (S.D.Fla. 2007) ("The primary purpose and function of a court in the interpretation of a maritime contract is to ascertain the intention of the parties.")

IV. Conclusion

Upon consideration, and for the reasons set forth herein, Regions' motion for summary judgment against the defendant vessels *in rem* is GRANTED.

Judgment shall be entered against the vessels by separate order as provided in Rule 58 of the Federal Rules of Civil Procedure.

Done this the 27th day of December, 2010.

                                                   s/ Kristi K. DuBose
                                                   **KRISTI K. DuBOSE**
                                                   **UNITED STATES DISTRICT JUDGE**